**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

JAMIE SHAWN MCCALL,                                                    PLAINTIFF
ADC #610019

v.                                    4:14CV00333-DPM-JTK

SHOCK, et al.                                                          DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge D. P. Marshall Jr.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The details of any testimony desired to be introduced at the new hearing in the

form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing.  Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

**DISPOSITION**

## I.     INTRODUCTION

Plaintiff Jamie McCall is a state inmate incarcerated at the Delta Regional Unit of the Arkansas Department of Correction (ADC).  He filed this pro se action pursuant to 42 U.S.C. § 1983, alleging unconstitutional conditions of confinement on various occasions while he was housed at the Faulkner County Detention Center (Jail) in 2013 and 2014.  Defendants are Sheriff Shock, former Assistant Jail Administrator Lloyd Vincent, and John Doe, Major.[1]  Plaintiff asks for monetary and injunctive relief.

This matter is before the Court on Defendants' Motion for Summary Judgment, Brief in support and Statement of Facts (Doc. Nos. 51-53).  Plaintiff filed a Response to the Motion, and Objections to Defendants' Statement of Facts (Doc. Nos. 63-64).

## II.     COMPLAINT

Plaintiff alleges Defendants "enforce policies" at the Jail that create unconstitutional conditions. (Doc. No. 2, p. 1) Specifically, he claims that during his stays at the Jail he was not tested

---

[1]Plaintiff has never identified John Doe and therefore, he should be dismissed, for failure to serve.

2

for tuberculosis (TB), and that no TB lights are located at the Jail. (Id.) He claims that every inmate is issued his own cup and spoon and must wash these items in the cell sink, using motel soap which is used for bathing.  (Id., pp. 4-5) At one point he became sick, and believes it was caused by eating with a dirty spoon and drinking out of a dirty cup.  (Id., p. 5)  Plaintiff also claims that the meals are inadequately prepared and served by Act 309 inmates who are not supervised, that the meal portions are small, and include only one hot meal per day. (Id.)  Finally, he claims that he was housed at the Jail on two separate occasions when scheduled for court, and both times was forced to sleep on the floor in a one-man cell with two-three other inmates. (Id.)  He also claims he was forced to sleep next to the toilet where he was splashed with urine.  (Id.)

## III.    SUMMARY JUDGMENT

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997).  "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (citations omitted).  "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials of allegations in the pleadings; rather, the non-movant must set forth specific facts showing that there is a genuine issue for trial."  Id. at 1135 (citations omitted). Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

### A.    Qualified immunity

Defendants state they are entitled to qualified immunity, which protects officials who acted in an objectively reasonable manner.  It may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity is a question of law, not a question of fact.  McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005).  Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful.  Pearson v. Callahan, 555 U.S. 223, 232 (2009); see also Saucier v. Katz, 533 U.S. 194, 201 (2001).[2]  Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative.  Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009).

Although "[t]he Constitution does not mandate comfortable prisons," humane conditions of confinement include "adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994).  In order to support an Eighth Amendment violation, Plaintiff must prove the

---

[2]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009) (quoting Pearson v. Callahan, 555 U.S. at 236).

existence of objectively harsh conditions of confinement, together with a subjectively culpable state

of mind by prison officials in condoning or creating the conditions.  Choate v. Lockhart, 7 F.3d 1370,

1373 (8th Cir. 1993).[3]  The "defendant's conduct must objectively rise to the level of a constitutional

violation,...,by depriving the plaintiff of the 'minimal civilized measure of life's necessities.'... The

defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to

the health or safety of the prisoner." Revels v. Vincenz, 382 F.3d 870, 875 (8th Cir. 2004) (quoting

Rhodes v. Chapman, 452 U.S. 337, 342 (1981) and Estelle v. Gamble, 429 U.S. 97, 104 (1977)).

"To be cruel and unusual punishment, conduct that does not purport to be punishment at all must

involve more than ordinary lack of due care for the prisoner's interest or safety...." Wilson v. Seiter,

501 U.S. 294, 298-9 (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)).   Furthermore,

"discomfort compelled by conditions of confinement, without more, does not violate the

amendment." Smith v. Coughlin, 748 F.2d 783, 787 (2d Cir. 1984) (quoting Jackson v. Meachum,

699 F.2d 578, 581 (1st Cir. 1983).

        In addition, supervisor liability is limited in § 1983 actions, and a supervisor cannot be held

liable on a theory of respondeat superior for his or her employee's allegedly unconstitutional actions.

See White v. Holmes, 21 F.3d 277, 280 (8th Cir. 1994).   A supervisor incurs liability only when

personally involved in the constitutional violation or when the corrective inaction constitutes

deliberate indifference toward the violation.  Choate v. Lockhart, 7 F.3d at1376.

        Initially, Defendants state that Plaintiff fails to support a constitutional claim for relief against

---

[3]The Court is not clear whether Plaintiff was a pretrial detainee during all the time
periods at issue in his Complaint.  While the due process standard of the Fourteenth Amendment
applies to determine the constitutionality of pretrial detainees' conditions of confinement (Bell v.
Wolfish, 441 U.S. 520, 535 (1979)), in the Eighth Circuit, the standards applied to such claims
are the same as those applied to Eighth Amendment claims.  Whitnack v. Douglas County, 16
F.3d 954, 957 (8th Cir. 1994).

them because he does not allege personal involvement by them with respect to the conditions to which he was subjected, and because liability cannot be based solely on their supervisory positions, citing Clemmons v. Armontrout, 477 F.3d 962, 967 (8th Cir. 2007).  Plaintiff responds by claiming that as the policy-maker at the Jail, Defendant Shock is directly responsible for ensuring adequate conditions exist there.

In his Complaint, Plaintiff states that when he complained about certain conditions, he was told that Defendant Vincent instructed inmates to wash their own cups and spoons, and that both Defendants approved placing three and four inmates into one-man cells. (Doc. No. 2, pp. 5-6) While his allegations do not specifically point to direct participation or knowledge by the Defendants, they do point to the acceptance or condoning of certain practices by Defendants, and therefore, the Court will not dismiss Plaintiff's Complaint against Defendants solely on this basis.

However, the Court does find that Defendants are protected by qualified immunity for the following reasons:

### 1.      Tb tests/lights

Plaintiff claims Defendants have a duty to protect detainees from communicable diseases, and that their failure to test everyone who enters the Jail creates a risk of harm to the inmates.  He also claims that Defendants' practice of relying on inmates to divulge TB test results and symptoms creates an additional risk of harm.

According to the affidavit of John Randall, acting Jail Administrator, the Jail has TB lights in the booking facility, where all detainees pass when they enter the facility.  (Doc. No. 53-1, p.1) Plaintiff was medically screened for TB upon booking into the facility, and indicated that  his last TB test in 2013 was negative.  (Id., p. 2; Doc. No. 53-2, p. 2)  Plaintiff did not at that time indicate that he suffered from any symptoms of TB and he never submitted a medical request complaining

of symptoms, or of exposure to someone with active TB.  (Doc. No. 53-1, p. 2)

The Court finds that Plaintiff fails to provide any proof that Defendants were deliberately indifferent to a risk of harm.  The Jail operates under a Communicable and Infectious Diseases policy, which provides specific instructions on screening for the disease upon booking, and subsequent testing if certain signs and symptoms are identified during screening.  (Doc. No. 53-4) In addition, Plaintiff does not allege that he was not properly screened and he does not allege any specific facts to show that he was knowingly housed with infectious inmates.  Plaintiff also provides no proof of having submitted a sick call request in which he complains about symptoms which would necessitate additional TB testing.

### 2.      Sanitation and Hygiene

Plaintiff complains that Defendants posed a risk of harm by refusing to wash his spoon and cup in the kitchen dishwasher after each use, and instead requiring Plaintiff to wash these items himself in his cell sink using the same soap he used to clean his body.  He claims that at one point he became sick, and that it was possibly due to Defendants' requiring him to eat with dirty utensils.

In his affidavit, Randall states that detainees are provided cleaning supplies for their cells, that the Jail boiler room water temperature is set between 130-140 degrees Fahrenheit, and that detainees are given soap each week.  (Doc. No. 53-1, p. 2)

Again, Plaintiff provides no proof that Defendants acted with deliberate indifference to a serious risk of harm.  He does not allege that Defendants prevented him from washing his utensils; rather, he complains about the method of washing.  He also does not provide any additional evidence to support a finding that this practice results in a serious risk of harm.  His allegation that eating with dirty utensils may have been the cause of an illness is not sufficient to show deliberate indifference by Defendants to a serious risk of harm.

### 3.    Food

Plaintiff complains that Defendants allow Act 309 inmates to prepare and cook food "with little to no supervision" and that this creates a substantial risk of harm, because a high percentage of inmates engage in certain behaviors which could cause him harm.  (Doc. No. 63, p. 6)  He also admits that he cannot prove that the food served was below constitutional standards, but he claims that adults do not receive the required 2300 calories per day. (Doc. No. 63, p. 7) In support, he states that juveniles receive 2275-2575 calories a day, but unlike adults, they receive orange juice and milk at both breakfast and lunch.

In response, John Randall states that the Jail employs an officer to supervise the kitchen workers, and who is present in the different kitchens multiple times per week.  (Doc. No. 53-1, p. 2)  In addition, when the supervisor is not present in a particular kitchen, other officers are in and out of the kitchen throughout the day.  (Id., p. 3)  The Act 309 inmates are provided specific spoons and utensils to serve equal portions to the detainees, and a weekly menu approved by a dietician ensures that detainees receive at least 2300 calories per day.  (Id., Doc. No. 53-8)

Inmates are guaranteed a reasonably adequate diet.  Campbell v. Cauthron, 623 F.2d 503, 508 (8th Cir. 1980).  However, inmates have no right to be served a particular type of food, and the Eighth Amendment is violated only if the food is inadequate to maintain good health.  Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996); Burgin v. Nix, 899 F.2d 733, 734-5 (8th Cir. 1990).  Here, Plaintiff provides no proof that he was deprived of food or that his health suffered from the diet he received.  In addition, he provides no proof that Defendants were deliberately indifferent to a serious risk of harm.  Although he claims the possibility of improper behavior by inmates who serve food, he does not allege any particular facts or a specific incident to support this claim.

4.      **Housing**

Plaintiff claims that on two different occasions, he was required to sleep on the floor of a one-man cell near the toilet with two or three other inmates, where he was splashed with urine.[4]

According to John Randall, the cells in the booking area of the Jail are short-term, and designed to hold more than one detainee.  (Doc. No. 53-1, p. 3) The cell in which Plaintiff was housed is 8 feet wide by 13 feet long.  (Id.)  Jail records also show Plaintiff was incarcerated in that cell from January 24, 2014 - January 29, 2014, March 18, 2014 - March 19, 2014, and May 1, 2014 - May 5, 2014.  (Id., Doc. No. 53-2)

As noted earlier, although "[t]he Constitution does not mandate comfortable prisons," humane conditions of confinement include "adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. at 832.  In addition, "[n]othing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists."  Wilson v. Seiter, 501 U.S. at 305.  The United States Court of Appeals for the Eighth Circuit has held that there is no absolute Eighth Amendment right to be placed in a cell with bedding. Williams v. Delo, 49 F.3d 442, 446 (1995).  And, no constitutional rights were violated when a pretrial detainee was confined in a cell with an overflowed toilet for four days, in Smith v. Copeland, 87 F.3d 265, 268-9 (8th Cir. 1996).  "Conditions, such as a filthy cell, may 'be tolerable for a few days and intolerably cruel for weeks or months,'" Whitnack v. Douglas County, 16 F.3d at 958 (quoting Howard v. Adkison, 887 F.2d 134, 137 (8th Cir. 1989)) (other citations omitted). And no constitutional violation was found where a detainee was required to sleep on the floor next to a toilet

---

[4] Although Plaintiff refers to two different time periods in his complaint (January 25, 2014, and May 1, 2014) (Doc. No. 2, pp. 5-6), in his response to Defendants' Motion he refers to several other time periods, after the filing of this complaint (Doc. No. 63, p. 8).

for six nights, in <u>Goldman v. Forbus</u>, 17 Fed.App. 487, 488 (8th Cir. 2001) (unpublished per curiam).

Considering the totality of the circumstances and the short periods of time at issue, the Court finds that Plaintiff's conditions of confinement were not unconstitutional, and that he provides no proof of the deprivation of a single human need. He does not allege that he was deprived of bedding, and he does not allege any personal knowledge or participation by the named Defendants. Given the short period of time involved and the lack of personal involvement, the Court finds that no fact finder could find that the facts alleged or shown, construed in the light most favorable to Plaintiff, established a violation of a constitutional or statutory right.

### B.     Official Capacity Immunity

Similarly, Plaintiff provides no proof of Defendants' liability in their official capacities. A suit against a county official in his official capacity is the equivalent of a suit against the county itself. <u>Liebe v. Norton</u>, 157 F.3d 574, 578-9 (8th Cir. 1998). In order for a county to be held liable for the unconstitutional acts of its officials, Plaintiff must allege and prove that a written county policy or pattern of widespread unconstitutional conduct was the moving force behind the unconstitutional actions. <u>Jane Doe A v. Special School District of St. Louis County</u>, 901 F.2d 642, 646 (8th Cir. 1990). In this case, Plaintiff has not provided proof of an unconstitutional county policy or prevalent practice which resulted in a violation of his rights.

## IV.    CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1.      Defendants' Motion for Summary Judgment (Doc. No. 51) be GRANTED, and Plaintiff's Complaint against Defendants be DISMISSED with prejudice.

2.      Plaintiff's Complaint against Defendant John Doe be DISMISSED for failure to

serve.

IT IS SO RECOMMENDED this 5th day of May, 2015.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE